A. HARRINGTON, Respondent, v. H. CLAY NEVILLE, Appellant.

**St. Louis Court of Appeals, March 13, 1900.**

1. Forfeiture: CONTRACT; CONSTRUCTION: TITLE. The word forfeit in a contract has various meanings, depending on the connection in which it is used. It has been held to be a word of transfer of title.

2. ———: ———: ———. The same instrument may have the effect of passing and re-investing the title to property.

3. ———: ———: CONTRACT CONSTRUED. The legal effect of the contract in the case at bar was to vest in Hughes the undivided interest of Harrington in the paper, and its further effect was to invest in Harrington the entire title to the paper and the right to the immediate possession of it, should its publication be suspended during the stipulated time.

Appeal from the Wright Circuit Court.—*Hon. Argus Cox,* Judge.

AFFIRMED.

*F. M. Mansfield, W. D. Tatlow* and *J. T. White* for appellant.

(1) When property is sold upon a condition subsequent the performance or nonperformance of which forfeits the title, the condition can be made to attach only to the property sold: The forfeiture could not go to the half interest which Hughes already owned. Henry v. Mayer, 53 Pac. Rep. 590; 1 Bou. Law Dict. Title, Forfeiture; Newmark on Sales, sec. 193. (2) Replevin will not lie in favor of one joint owner against another. At most Harrington only acquired by forfeiture his original half interest, and could not therefore maintain the replevin. Lisenby v. Phelps, 71 Mo. 522; Gusset v. Drydale, 48 Mo. App. 432; Cross v. Hulet, 53 Mo. 397. (3) On the plaintiff's own theory, then, in the sale by Harrington to Hughes of the former's half interest, the title to that half interest vested immediately in Hughes. Chamberlain v. Dickey, 31 Wis. 68; Key v. Braun, 3 S. W. Rep. (Texas) 433; Lillianthal v. Suffolk Brewing Co., 154 Mass. 185; 15 American Law Review, 379; Newmark on Sales, sec. 193. (4) The law does not favor forfeitures. If possible, a construction will be adopted which will prevent a forfeiture. If the supposed condition goes to only a part of the consideration, or if the value forfeited should be out of proportion to the actual damages, it would be construed to be a covenant or penalty. This applies with double force to the half interest Hughes always owned. 2 Parsons on Contracts [6 Ed.], star pages 527, 677; Tinkham v. Satori, 44 Mo. App. 659; McCullum v. Niagara Fire Ins. Co., 61 Mo. App. 352; Potter v. McPherson, 61 Mo. 247; Cochran

v. Peoples' Railway Co., 113 Mo. 363.    (5) If it be claimed
that the forfeiture is used in the sense of liquidated damages,
the position is fatal to plaintiff, for there are no words trans-
ferring title, nor is possession given.    It could only be an
equitable interest.    (See argument).    (6)    To declare a for-
feiture and enter for condition broken must be after demand
and refusal to perform.    In this case no demand was ever
made on Hughes or his grantee Neville to perform the al-
leged condition.    Donnelly v. Estes, 69 N. W. R. 157; Risley
v. McNiece, 71 Ind. 434; 5 Ballard on Real Property, sec.
289.    (7) In this case not only was there no such demand,
but the action was brought before there was a failure to
perform.    This action at the best could only be maintained
on an actual breach of condition.    It could not be maintained
on merely a threatened breach.    Tobin v. McCann, 17 Mo.
App. 481; Jennings v. Zerr, 48 Mo. App. 528; Bank v.
Hastings, 41 Amer. Dec. 567; Auxier v. Taylor, 72 N. W.
291.

*Jas. R. Vaughan, Len Walker, J. W. Jackson, L. O.
Neider* and *Thomas H. Musick* for respondent.

(1)    The rule in the interpretation and enforcement of
contract, which is most wide-reaching and important, is to
ascertain the actual intention of the parties to the contract
and to carry out such contract according to the intention of
the parties who made it.    Ellis v. Harrison, 104 Mo. 270;
H. & L. Ice & Trans. Co. v. Heinze, 102 Mo. 245; Belch v.
Miller, 32 Mo. App. 387; Carter v. Arnold, 134 Mo. 195.
(2)    Words used in a contract will be given their popular
meaning; in other words, the meaning which is generally
understood in the community.    Fruin v. Crystal R. Co., 89
Mo. 397; Ruby v. Forcht, 21 Mo. App. 159; Weil v.
Schwartz, 21 Mo. App. 372; Lovelace v. Travelers' Pro.

Ass'n 126 Mo. 104.    (3) Another important rule in the construction of contracts is to determine how the parties to the contract understood it, and if by acts, words or rule of conduct, they have given an interpretation to the contract, to follow such interpretation. Rose v. Carbonating Co., 60 Mo. App. 28; St. Louis Gaslight Co. v. St. Louis, 46 Mo. 121; Sedalia Brewing Co. v. Sedalia W. W. Co., 34 Mo. App. 49; St. Joe Depot Co. v. Railroad, 131 Mo. 291. (4) The word forfeiture as used in this contract simply means that the property upon default should become Harrington's property —that the title to it should go to him, or in other words, that while it had been transferred conditionally by Harrington to Hughes, if he failed to comply with his agreement, as he did, it should then become Harrington's property.   The word is defined by Webster and other lexicographers, as a species of alienation through neglect.   It is sometimes used in the sense of a grant or a conveyance.   Commonwealth v. Avery, 14 Bush 638.    (5)   Appellant says there are no operative words in the agreement to pass title back to plaintiff.   The word forfeiture is clearly such a word.

BIGGS, J.—This is an action of replevin to recover possession of materials belonging to a newspaper plant.   The suit was instituted against H. C. Neville and H. H. Hughes. The property was taken from the possession of Neville and delivered to plaintiff.   On a trial before the court the issues were found for plaintiff as against Neville, and the damages assessed at one cent.   The court discharged Hughes. Neville has appealed from the judgment against him.

In February, 1898, the plaintiff and Hughes established the Springfield Mail, a weekly democratic newspaper, to be published in the city of Springfield in Greene county.   The declared policy of the paper, as the uncontradicted evidence shows, was to be the advocacy of the principles enunciated in

the platform adopted by the national democratic party in its convention at Chicago in 1896. Harrington and Hughes were well known in the city and county. In canvassing for subscribers to the paper, whose subscriptions were paid in advance, Harrington and Hughes assured their friends that the publication of the paper would be continued at least until the expiration of their subscriptions, and that the policy of the paper during the time would not be changed. The publication of the paper was commenced and Harrington and Hughes continued to publish it until August, 1898, when Harrington sold his interest to Hughes. Hughes subsequently, to wit, in December, 1898, sold the paper to Neville, the defendant, and the latter suspended its publication on the fifth day of January, 1899. Harrington brought this suit on January 9. He claims that under his contract with Hughes (of which the defendant had notice prior to his purchase) the publication of the paper was not under any circumstances to be suspended prior to August, 1899, and that should this condition of the contract be violated, the entire title to the paper should be vested in him (Harrington). This is the basis of plaintiff's title to and his alleged right to the possession of the paper.

The controlling questions in the case arise out of the contract between Harrington and Hughes, and they are presented in the record by defendant's objection and exception to the introduction of any evidence, the substance of the contract between plaintiff and Hughes having been set forth in the petition. The contract is as follows:

"Contract and agreement made and entered into this sixteenth day of August, 1898, by and between A. Harrington and H. H. Hughes, both of Greene county, Missouri, as follows:

"The said A. Harrington has this day, for and in consideration of one dollar in hand paid by said H. H. Hughes,

sold, signed and set over to said H. H. Hughes, all his right, title, and interest in and to the Springfield Mail, a weekly newspaper published in the city of Springfield, Missouri, and all the furniture and fixtures, office and equipments of every kind whatsoever there unto belonging, including the book accounts and subscription list. The said H. H. Hughes is to pay all debts and satisfy all obligations of the Mail Publishing Company to this date and hold the said A. Harrington harmless, clear and free from any obligations heretofore incurred by the Mail Publishing Company, its agents or managers.

"That the said H. H. Hughes thereby agrees for the further consideration for the said A. Harrington's interest in the said Springfield Mail, that he, the said Hughes, will have said Mail published for the period of one year from this date in a respectable manner and that the political policy of the said paper shall be along the line of the Chicago platform of 1896, adopted by the democratic party, and the strict adherence to the policy of free and unlimited coinage of silver and gold at the ratio of 16 to 1.

"And the said H. H. Hughes further agrees that in the event that he should fail to comply with the requirements of this contract that he will forfeit his right, title and interest, as well as that acquired by this contract, to the said A. Harrington without controversy; so that said Harrington may continue the publication of the Mail."

The main contention of counsel for the defendant is, that at most the legal effect of the contract was to cause a forfeiture of the half interest sold by Harrington, in the event the publication of the paper was suspended prior to the stipulated time; that the forfeiture could not be made to extend to the interest owned by Hughes and which Harrington never owned and that therefore plaintiff could not maintain the action, as one joint owner can not maintain replevin

for the common property against his co-owner. The basis of this argument is that the word "forfeiture" can not be construed as transferring title, and hence in this case can not apply to Hughes' interest in the paper which Harrington never owned. We can not agree to this. The legal effect of the contract was to vest in Hughes the undivided interest of Harrington in the paper, and its further effect was to invest in Harrington the entire title to the paper and the right to the immediate possession of it, should its publication be suspended during the stipulated time. This is the plain reading of the contract. Besides this view is supported (if it needed any support) by the testimony of both Harrington and Hughes, who so understood the contract, and Hughes further testified that he communicated this to defendant prior to his purchase. The word forfeit has various meanings, depending upon the connection in which it is used. It has been held to be a word of transfer of title (Commonwealth v. Avery, 14 Bush. 638). It is also the law that the same instrument may have the effect of passing and re-invest the title to property (Newmark on Sales, sec. 193).

But it is claimed that the agreement by Hughes that his half interest in the paper should pass to Harrington upon the contingency stated, is not supported by a valuable consideration. Granting that this objection can be urged by defendant, we do not think that it is well taken. Under the testimony Harrington released Hughes from one-half of the purchase price of a cylinder press which Harrington had paid for. Harrington paid Hughes twenty-five dollars in cash, and he agreed that if Hughes failed to keep their promise with the subscribers of the paper he (Harrington) would do so, which the evidence shows was an onerous undertaking as the paper was published at a loss.

Neither is there anything oppressive or unreasonable in the contract. Both parties fully understood its meaning.

Its primary object was to redeem the promise of the founders of the paper to its subscribers, as the evidence shows that the paper was being published without profit.

Therefore we hold that upon the suspension of the publication of the paper by Neville the entire title to the plant vested in Harrington.

It is claimed that prior to the institution of the suit there was no demand made on defendant for the performance of the contract, or for the possession of the property. Conceding the necessity for such demands, the record does not sustain the defendant's contention. When the plaintiff learned of the suspension of the paper he complained to Hughes. He then complained to defendant, who said that he had bought the paper and had the right to do as he pleased with it. And before suit was brought plaintiff demanded of defendant the possession of the property.

The defendant offered to show that at the time he determined to cease publishing the Springfield Mail, he made an arrangement with the business manager of the Leader-Democrat, another paper published in the city of Springfield, to send that paper to the subscribers of the Mail, and further that the Leader-Democrat advocated the principles enunciated by the Chicago platform. These offers of proof were properly rejected. The proposed arrangement would not have met the conditions of the contract between Harrington and Hughes.

Again, it is urged that this suit was prematurely brought, for the reason that there had been no suspension of the publication of the paper; that the defendant had only expressed an intention to do so. In the issue of January 5, the defendant stated that the publication of the paper would cease with that issue. He afterwards reiterated this to the plaintiff. The office of the paper was closed; the employees discharged, and no effort was being made to get out the

next issue. These facts constituted a failure on the defendant's part to publish the paper, and was a violation of the contract between plaintiff and Hughes, by which the defendant was bound, and the plaintiff was not bound to wait until the time for the next issue had passed before instituting his suit.

In the discussions of the various propositions in the briefs, counsel have cited many authorities, which we do not deem applicable or controlling, and for this reason we have not commented on them. We think that the case has been very fairly tried, and that the judgment, which is for the right party, should be affirmed. All concur.